IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HARLEYSVILLE PREFERRED INSURANCE COMPANY, A Pennsylvania Corporation, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | Case No.  23-cv-01041 |
| v. | ) ) | |
| LONDONHOUSE CHICAGO LEASCO LLC DBA THE LONDONHOUSE CHICAGO, a Delaware Limited Liability Company; and JEREMY LANGFIELD and STEVEN PIGGOTT, | ) ) ) ) ) ) | |
| Defendants. | | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, HARLEYSVILLE PREFERRED INSURANCE COMPANY, A Pennsylvania Corporation, by and through its attorneys, MEAGHER & GEER, P.L.L.P., states the following as its Complaint for Declaratory Judgment, pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, against Defendants, LONDONHOUSE CHICAGO LEASCO LLC DBA THE LONDONHOUSE CHICAGO, a Delaware Limited Liability Company; and JEREMY LANGFIELD and STEVEN PIGGOTT:

**Introduction**

1. This is a Declaratory Judgment action to obtain a declaration of the rights and obligations under a CGL insurance policy, Policy Number MPA00000065293X, issued by Harleysville Preferred Insurance Company ("Harleysville") and issued to their named insured, LONDONHOUSE CHICAGO LEASCO LLC DBA THE LONDONHOUSE CHICAGO, a Delaware Limited Liability Company ("LondonHouse"). Plaintiff seeks a declaration from this

Court regarding the extent of the Plaintiff's rights and obligations, if any, under the Policy for the allegations in the lawsuit entitled, *Jeremy Langfield and Steven Piggott, on behalf of themselves and all other persons similarly situated, known and unknown v. 360 Management Company, LLC d/b/a LondonHouse Hotel, case no. 2019 CH 14896.*, filed in the Chancery Division of the Circuit Court of Cook County, State of Illinois (the "Underlying Complaint"). (A copy of the Underlying Complaint is attached as Exhibit A.)

2. Plaintiff seeks a declaration from this Court that it owes no obligation under its policy to defend and/or to indemnify LondonHouse with regard to the allegations in the Complaint.

**Jurisdiction and Venue**

3. Plaintiff, Harleysville Preferred Insurance Company ("Harleysville"), is an insurance company with its principal place of business in Harleysville, Pennsylvania and is authorized to issue policies of insurance in the state of Illinois.

4. Defendant, LONDONHOUSE CHICAGO LEASCO LLC DBA THE LONDONHOUSE CHICAGO. ("LondonHouse"), is a limited liability company organized under the laws of Delaware, with its principal place of business in Chicago, Illinois. LondonHouse conducts business in Cook County, Illinois. The Underlying Complaint alleges that LondonHouse "operates LondonHouse Hotel in Chicago, Illinois." (Exhibit A, ¶ 1.)

5. Defendant, Jeremy Langfield, (Langfield) is a citizen of Illinois. Plaintiff names Langfield as a potentially interested party by virtue of his status as a named plaintiff and putative class representative in the Underlying Complaint. No affirmative relief is sought against Langfield. (*See* Exhibit A.)

6.	Defendant, Steven Piggott, (Piggott) is a citizen of Illinois. Plaintiff names Piggott as a potentially interested party by virtue of his status as a named plaintiff and putative class representative in the Underlying Complaint. No affirmative relief is sought against Piggott. (*See* Exhibit A.)

7.	Langfield alleges that he was employed as a steward at defendant's London House Hotel from May 2016 to August 2017. (*See* Exhibit A. at par. 2)

8.	Piggott alleges that he was employed as a utility worker at defendant's London House Hotel from May 15, 2018 to October 29, 2019. (*See* Exhibit A. at par. 3)

9.	Diversity jurisdiction exists because: (a) there is complete diversity of citizenship between the Plaintiff, Harleysville, on the one hand, and Defendants, LondonHouse, Langfield and Piggott, on the other hand; and (b) the amount in controversy, including the potential cost of defending and indemnifying LondonHouse in the Underlying Complaint well exceeds $75,000.

10.	Venue is appropriate under 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to this lawsuit occurred in this District, including where the statutory violations alleged in the Underlying Complaint occurred and where the underlying lawsuit is pending.

11.	An actual justiciable controversy exists between Harleysville, on the one hand, and LondonHouse, on the other hand, and by the terms and provisions of Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and this Court is invested with the power to declare the rights and liabilities of the parties hereto and to grant such relief as it deems necessary and proper.

**The Underlying Putative Class Action Lawsuit**

12. On December 26, 2019, Defendants Langfield and Piggott filed a putative class action complaint directed against LondonHouse in the Chancery Division of the Circuit Court of Cook County, Illinois, which is entitled, *Jeremy Langfield and Steven Piggott, on behalf of themselves and all other persons similarly situated, known and unknown v. 360 Management Company, LLC d/b/a LondonHouse Hotel, case no. 2019 CH 14896.* (The "Underlying Complaint"). (*See* Exhibit A, First Amended Class Action Complaint.)

13. The Underlying Complaint contains three counts directed against LondonHouse.

14. Count I is titled 'Violation of the Biometric Information Privacy Act (740 ILCS 14/15(b) (Class Action)' and alleges "Defendant violated the Biometric Information Privacy Act by capturing or collecting Plaintiffs' and the Class's fingerprints and information based on their fingerprints without first informing them in writing of the purpose of Defendant doing so and the length of time Defendant would store and use Plaintiff's and the Class's biometric identifiers and/ or biometric information." (See Exhibit A at par. 46).

15. Count II is titled 'Violation of the Biometric Information Privacy Act (740 ILCS 14/15(a) (Class Action)' and alleges "Defendant violated the Biometric Information Privacy Act by possessing Plaintiffs' and the Class's fingerprints and information based on their fingerprints without creating and following a written policy, made available to the public, establishing a retention schedule and destruction guidelines for its possession of biometric information derived from Plaintiffs' and the Class's fingerprints." (Exhibit A at par. 53).

16. Count III is titled 'Violation of the Biometric Information Privacy Act (740 ILCS 14/15(d) (Class Action)' and alleges that "Defendant violated the Biometric Information Privacy Act by disclosing or otherwise disseminating Plaintiffs' and the Class's fingerprints and

information based on their fingerprints to Defendant's time-keeping vendor without first obtaining their consent for that disclosure or dissemination." (Exhibit A at par. 60).

17. The Underlying Complaint seeks to certify a purported class of "Defendant's workers who scanned their fingerprints in Defendant's biometric time clock system in Illinois between December 26, 2014 and the present without first executing a written release…." (Exhibit A, at par. 29).

18. The Underlying Complaint seeks 'liquidated or actual monetary damages, whichever is higher, to Plaintiffs and the Class for each violation of the Biometric Information Privacy Act…" as well as "reasonable attorneys' fees and costs." (Exhibit A, prayers for relief Counts I, II and III, at pages 7, 9, 10).

## The Harleysville CGL Policy

19. Harleysville issued to LondonHouse CGL Policy No. MPA00000065293X, effective April 15, 2016 to June 1, 2018. (A copy of the Harleysville Policy is attached hereto and made a part hereof as Exhibit B).

20. The Harleysville CGL Policy contains the following policy provisions:

> **Coverage A- BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1. Insuring Agreement**
>
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies.
>
> ***
>
> 3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\*\*\*

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

1. **Insuring Agreement**

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies.

\*\*\*

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    a. False arrest, detention or imprisonment;
    b. Malicious prosecution;
    c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
    d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
    e. Oral or written publication, in any manner, of material that violates a person's right of privacy;
    f. The use of another's advertising idea in your "advertisement"; or
    g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

\*\*\*

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

    a. All expenses we incur.

    b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

    c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

    d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

    e. All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

\*\*\*

# SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

(1) This insurance is excess over:

  (a) Any of the other insurance, whether primary, excess, contingent or on any other basis:

    (i) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

    (ii) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

    (iii) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

    (iv) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

  (b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

(2) When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(a) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(b) The total of all deductible and self-insured amounts under all that other insurance.

(4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c. **Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

\*\*\*

## RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION OF LAW EXCLUSION

B. Exclusion p. of Paragraph 2. Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability is replaced by the following:

2. **Exclusions**

This insurance does not apply to:

p. **Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

\*\*\*

## EMPLOYMENT-RELATED PRACTICES EXCLUSION

B. The following exclusion is added to Paragraph 2., **Exclusions** of Section I – Coverage B – Personal And Advertising Injury Liability:

This insurance does not apply to:

"Personal and advertising injury" to:

(1) A person arising out of any:

   (a) Refusal to employ that person;

   (b) Termination of that person's employment; or

   (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

\*\*\*

## EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – WITH LIMITED BODILY INJURY EXCEPTION

B. The following is added to Paragraph 2. **Exclusions** of Section I – Coverage B – Personal And Advertising Injury Liability:

> **2. Exclusions**
>
> This insurance does not apply to:
>
> **Access Or Disclosure Of Confidential Or Personal Information**
>
> "Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

\*\*\*

## ILLINOIS CHANGES – DEFENSE COSTS

> **B.** If we initially defend an insured ("insured") or pay for an insured's ("insured's") defense but later determine that the claim(s) is (are) not covered under this insurance, we will have the right to reimbursement for the defense costs we have incurred.
>
> The right to reimbursement for the defense costs under this provision will only apply to defense costs we have incurred after we notify you in writing that there may not be coverage, and that we are reserving our rights to terminate the defense and seek reimbursement for defense costs.

\* \* \* \* \*

**LondonHouse's Tender to Harleysville**

21. On or about December 5, 2022, LondonHouse tendered to Harleysville the defense and indemnity of LondonHouse in relation to the Underlying Complaint.

22. On or about January 31, 2023, Harleysville undertook the defense of LondonHouse and issued to LondonHouse its Reservation of Rights letter in which Harleysville notified LondonHouse that it had reviewed the underlying complaint and its applicable policy and determined that there were significant questions related to whether Harleysville owed a duty to defend or indemnify LondonHouse in the underlying suit.

**COUNT I – DECLARATORY JUDGMENT**

23. Harleysville repeats and re-alleges the allegations in Paragraphs 1 through 22 as though fully set forth herein as paragraph 23.

24. Coverage A of the Harleysville Policy defines "bodily injury" as "The policy defines "bodily injury" as "bodily injury, disability, sickness or disease sustained by a person, including death resulting from any of these at any time." (*See* Exhibit B) The Underlying Complaint only alleges violations of a privacy statute, and contains no allegations related to bodily injury, sickness or death. Therefore, Harleysville owes no duty to provide coverage for bodily injury under Coverage A of the Harleysville Policy.

25. Coverage B of the Harleysville Policy provides for coverage for 'Personal and Advertising Injury (PAI). However, Coverage B is precluded by the exclusion titled "Recording and Distribution of Material in Violation of Law Exclusion", which excludes coverage for any bodily injury, property damage, or personal and advertising injury that arises from any act or omission in violation of any state statute that "addresses, prohibits or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating, or distribution of material or information." (See Exhibit B). This Exclusion precludes PAI coverage for the Underlying Complaint, because the Underlying Complaint arises directly from alleged violations of the Biometric Information Privacy Act ("BIPA") [740 ILCS 14/1 *et seq*.], which is an Illinois state statute that regulates "the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." Therefore, Harleysville owes no duty to provide coverage for bodily injury under Coverage B of the Harleysville Policy.

26. Additionally, and in the alternative, Coverage B is also precluded by the exclusion titled the 'Employment-Related Practices Exclusion' which precludes coverage for personal and

advertising injury causing harm to an employee arising from "employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person;" (See Exhibit B). This exclusion precludes coverage for the Underlying Complaint which alleges that LondonHouse violated BIPA by instituting an employment-related practice and policy that required its employees "to scan their fingerprints in [LondonHouse's] biometric time clock each time they started and finished working, including punching in and out for lunch breaks." (See Exhibit A at par. 5). Because the Underlying Complaint alleges that this employment-related practice and policy can cause harm to an employee, it is encompassed within the Exclusion. Accordingly, Harleysville owes no duty to provide coverage for bodily injury under Coverage B of the Harleysville Policy under 'Employment-Related Practices Exclusion.'

27. Additionally, and in the alternative, Coverage B is also precluded by the exclusion titled the 'Access Or Disclosure of Confidential Or Personal Information" which precludes coverage for personal and advertising injury arising from the "access to or disclosure of any person's… patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information." (See Exhibit B). This exclusion precludes coverage for the Underlying Complaint which alleges that LondonHouse violated BIPA by accessing, collecting and possessing the confidential fingerprint data from its employees and then disclosing and disseminating that data to third parties (See Exhibit A at pars. 45, 53 and 60). Because the Underlying Complaint alleges that LondonHouse accessed and disclosed plaintiffs' and the purported class's confidential, personal, non-public information, it is encompassed within the Exclusion. Accordingly, Harleysville owes no duty to

provide coverage for bodily injury under Coverage B of the Harleysville Policy under the 'Access or Disclosure of Confidential or Personal Information Exclusion.'

29. Additionally, and in the alternative, coverage under the Harleysville Policy is also precluded for any plaintiff or putative class member whose cause of action did not accrue during the pendency of the Harleysville Policy. Here, the Harleysville policy was in effect from April 15, 2016 to June 1, 2018. Accordingly, Harleysville owes no duty to provide coverage to LondonHouse for any alleged BIPA violations that occurred prior to April 15, 2016 or after June 1, 2018 or otherwise outside of the effective dates of the Harleysville CGL Policy.

30. Harleysville specifically denies any and all liability under the terms and provisions of the aforementioned policy of insurance, and each of its renewals, issued to LondonHouse, and insists that it is not obligated to defend or indemnify any judgment entered against LondonHouse in the Underlying Suit and, by reason of such demand, Harleysville is in peril and in danger of loss unless the policies of insurance be properly construed and the rights of all parties hereto determined in this action.

31. Finally, Harleysville seeks a declaration that it is entitled to be reimbursed for all defense costs incurred in the defense of the underlying lawsuit in the event there is a determination that the underlying suit is not covered by the Harleysville Policy in accordance with its CGL policy provision titled 'Illinois Changes – Defense Costs.'

32. An actual controversy exists between Harleysville and LondonHouse, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, the plaintiff, HARLEYSVILLE PREFERRED INSURANCE COMPANY, respectfully prays that this Honorable Court:

A. Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Harleysville CGL Policy;

B. Declare that Harleysville owes no duty to defend LONDONHOUSE CHICAGO LEASCO LLC DBA THE LONDONHOUSE CHICAGO, a Delaware Limited Liability Company under the Harleysville CGL policy, No. MPA00000065293X, in connection with the underlying class action complaint filed in the Chancery Division of the Circuit Court of Cook County, Illinois, under case no. *2019 CH 14896*;

C. Declare that Harleysville is entitled to be reimbursed for all defense costs incurred in the event there is a determination that the underlying suit is not covered by the Harleysville Policy; and

D. And any and all other relief that this Court deems just and equitable under the facts and circumstances.

HARLEYSVILLE PREFERRED INSURANCE COMPANY,

By: __s/Daniel I. Babetch_____
      One of Its Attorneys

Kurt Zitzer
Daniel I. Babetch
MEAGHER & GEER, P.L.L.P.
216 N. Jefferson Street, Suite 100
Chicago, Illinois 60661
(312) 463-1045
Attorney No. 6292410
Our File No.: 56597-00121
kzitzer@meagher.com
dbabetch@meagher.com